**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

SUSAN CAMERON                                                                                           PLAINTIFF

VERSUS                                                           CIVIL ACTION NO. 2:09cv234KS-MTP

TOMMY WALL, et al                                                                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on three separate motions:

(1)   Motion for Summary Judgment filed by Defendant State of Mississippi, through the Mississippi Transportation Commission and the Mississippi Department of Transportation ("MDOT") [Doc. # 54] (Sept. 7, 2010) which was joined by Defendants National Railroad Passenger Corporation ("Amtrak"), Tommy Wall, and R.M. Treadwell [Doc. # 58] and joined by Defendants Alabama Great Southern Railway Company ("AGS") and Norfolk Southern Railway Company ("Norfolk Southern") [Doc. # 62];

(2)   Motion for Partial Summary Judgment filed by Defendants Amtrak, Tommy Wall, and R.M. Treadwell [Doc. # 58] (Sept. 9, 2010); and

(3)   Motion for Partial Summary Judgment filed by Defendants AGS and Norfolk Southern [Doc. # 64] (Sept. 15, 2010).

The Court, having reviewed the motions, the responses, the pleadings, and exhibits on file and being otherwise fully advised in the premises, finds as follows:

## I. FACTS

On March 24, 2008, Plaintiff Susan Cameron's vehicle collided with an Amtrak train at a railroad crossing in Eastabuchie, Jones County, Mississippi. Defendant Tommy Wall was the

1

train conductor, R.M. Treadwell was the engineer, and the track was owned by AGS and/or Norfolk Southern.[1] All parties agree that the incident happened at the DOT Crossing No. 725585G.  This crossing is sometimes called "North Eastabuchie crossing" or "North Eastabuchie Road crossing."  While Church Street actually intersects the railroad tracks at this crossing, North Eastabuchie Road is proximately located and feeds auto traffic into this crossing.  Two-tenths of a mile south of the crossing in question is another crossing, DOT Crossing No. 725586N, which is located in Forrest County and is sometimes referred to as "Eastabuchie crossing" or "Eastabuchie Road crossing."  Eastabuchie Road intersects with the railroad track at this crossing.  *See* Matt Griffin Aff. ¶¶ 2-5,  Norfolk's Reb., Ex. A [Doc. # 76-1].  Although the common names of the crossing can lead to confusion, both parties agree that the accident in this litigation occurred at the northern railroad crossing, DOT Crossing No. 725585G.[2]  Robert A. Burt, MDOT's Director of Freight, Rails, Port & Waterways Division in Jackson, Mississippi, testified that "pursuant to the 1981 project identified as MDOT Project No. 75-0916-00-026-10, Federal Aid Project No. OP-0916-00-026-10, MDOT records show that federal funds were approved, and actually used, to fund the installation of advanced warning signs located at North Eastabuchie Road, Eastabuchie, Jones County, Mississippi, DOT Crossing No. 725585G."  Burt

---

[1]Norfolk Southern claims that AGS is the owner of the track and right-of-way at the crossing and submitted an agreed order to substitute AGS for Norfolk Southern.  Instead, Plaintiff named them both in his Amended Complaint.

[2]Cameron argues that this confusion alone is sufficient grounds to deny Defendants' motions for summary judgment.  However, the only relevant fact, that the accident occurred at DOT Crossing No. 725585G, is undisputed.  Whether the similar common names of neighboring crossings is or has been confusing is simply immaterial.  Notably, Cameron's pleadings refer to the crossing as "the railway crossing located on North Eastabuchie Road in Jones County, Mississippi."  *See* Am. Compl. ¶ 1, 12 [Doc. # 24].

Aff ¶ 3, MDOT's Mot. Summ. J., Ex. 3 [Doc. # 54-3]. At the time of the accident, DOT Crossing No. 725585G was protected by advance warning signs (round, yellow sign with black letters 'RXR'), pavement markings (the letters 'RXR' painted on the pavement immediately before the tracks), and crossbucks (white signs in an 'X' configuration with the words "RAILROAD CROSSING"). *See* Griffin Aff. ¶ 6 & Ex. A.

In her Amended Complaint, Cameron alleges several negligent acts by Defendants. *See* Am. Compl. [Doc. # 24] (Jan. 4, 2010). Specifically, Cameron alleges that the MDOT :(A) failed to inspect and locate unsafe conditions at the crossing as required by statute; (B) failed to direct railroad owner to make necessary repairs; (C) failed to enforce statutory requirement to post signage; (D) knew of and failed to rectify dangerous conditions at the crossing; (E) violated federal, state and municipal regulations, statutes, and ordinances; and (F) failed to enforce statutory requirements for railroad crossing safety. *See* Am. Compl. ¶ 20.

Cameron alleges that AGS and Norfolk Southern negligently failed to (A) remove vegetation by crossing; (B) provide adequate warning signs; (C) provide a reasonably safe crossing; and (D) provide adequate roadway signage; and that they (E) knew of and failed to rectify dangerous conditions at the crossing; and (F) violated federal, state and municipal regulations, statutes, and ordinances. *See* Am. Compl. ¶ 18.

Cameron alleges that Wall and Treadwell failed to (A) maintain a safe speed; (B) sound the train's warning signal; (C) stop the train prior to the collision; and (D) use reasonable care under the circumstances, and that they (E) operated the train in a reckless manner; and (F) violated federal, state and municipal regulations, statutes, and ordinances. *See* Am. Compl. ¶ 17.

Finally, Cameron alleges that Amtrak negligently: (A) failed to supervise its employees;

(B) failed to properly instruct its employees; (C) negligently entrusted the train to its operators; (G) [sic] failed to provide adequate warnings of approaching trains; (H) [sic] failed to provide adequate roadway signs; (I) [sic] knew of and failed to rectify dangerous conditions at the crossing; and (J) [sic] violated federal, state and municipal regulations, statutes, and ordinances. *See* Am. Compl. ¶ 19.

MDOT argues that despite Cameron's artful pleading, all of her claims against it are warning and signalization claims that are preempted because federal funds were used to equip the subject crossing with warning signs. The remaining defendants, Wall, Treadwell, Amtrak, AGS, and Norfolk Southern join MDOT's motion and argue separately for partial summary judgment on the railroad crossing warning claims because these claims are preempted.

## II. STANDARD OF REVIEW

Summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2)*; see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  To support a motion for summary judgment, "the moving party ... [has] the burden of showing the absence of a genuine issue as to any material fact." *Burleson v. Tex. Dept. of Criminal Justice,* 393 F.3d 577, 589 (5th Cir. 2004).  Material facts are those that "could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (internal citations omitted).  Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party" on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the court views all evidence "in the light most favorable to the non-moving party" and "draw[s] all reasonable inferences in its favor." *Breen v. Texas A&M Univ.*, 485 F.3d 325, 331 (5th Cir. 2007). If the movant satisfies its initial burden, then the burden shifts back to the nonmoving party to produce evidence indicating that a genuine issue of material fact exists for each essential element of its case. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003). The nonmovant is not entitled to merely rest on his pleadings, but must set forth "specific facts showing there is a genuine issue for trial." *DirecTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). If the nonmovant responds and still "no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

### III. APPLICATION

The Federal Highway Administration ("FHWA") has promulgated several regulations implementing the Federal Railway-Highway Crossings Program, 23 U.S.C. § 130, which provides federal funding for states to eliminate certain hazards at railway crossings. *See Norfolk Southern Ry. Co. v. Shanklin*, 529 U.S. 344, 348 (2000). One such regulation, § 646.214(b)(3), lists certain possible railroad crossing conditions, and requires the installation of automatic gates and flashing lights if any of the conditions are present and federal funds "participate in the installation of the devices." 23 C.F.R. §646.214(b) (1999). When federal funds are being used but none of the conditions in (b)(3) are present, the decision of what warning devices to install is subject to FHWA approval regardless of whether the state or the railroad makes the determination. *See* 23 C.F.R. § 646.214(b)(4). "When the FHWA approves a crossing improvement project and the State installs the warning devices using federal funds, §§

646.214(b)(3) and (4) establish a federal standard for the adequacy of those devices that displaces state tort law addressing the same subject." *Shanklin*, 529 U.S. at 357; *see also Hester v. CSX Transp., Inc.*, 61 F.3d 382 (5th Cir. 1995). The United States Supreme Court further noted:

> It is this displacement of state law concerning the devices' adequacy, and not the State's or the FHWA's adherence to the standard set out in §§ 646.214(b)(3) and (4) or to the requirements of the MUTCD [U.S. Dep't of Transp., FHWA, Manual on Uniform Traffic Control Devices], that pre-empts state tort actions. Whether the State should have originally installed different or additional devices, or whether conditions at the crossing have since changed such that automatic gates and flashing lights would be appropriate, is immaterial to the pre-emption question.

*Shanklin*, 529 at 357-58. "[P]reemption of a grade crossing warning device claim under the FRSA may not, under certain circumstances, preclude other types of claims in connection with crossing accidents, such as failure to sound a train's whistle, train speed faster than federal limits, failure to use train's headlights, and inadequate maintenance of the crossing surface." 65 Am.Jur.2d Railroads § 384.

### A.  Claims Against MDOT

Here, Cameron's claim "C" that the MDOT negligently failed to enforce the statutory requirement to post signage is only preempted if federal funds were approved and spent on railroad warning signs. Defendants provided the affidavit of Burt that states that federal funds were approved and used to install advance warning signs at the crossing. The MDOT records attached as exhibits to his affidavit support his testimony. Furthermore, Matt Griffin, Norfolk Southern's District Superintendent testified that a picture of the crossing taken on March 24, 2008, shortly after the accident at issue, clearly shows crossbucks, pavement markings, and an

advance warning sign.

In response, Cameron relies on the "State of Mississippi Uniform Crash Report" filled out by the Jones County Sheriff's Department for the accident in question to show a genuine issue whether the crossing had advance warning signs. *See* Pl.'s Resp., Ex. A [Doc. # 72-1]. On the fourth page of the report, the reporting officer can fill in a circle next to whatever traffic control devices were present, if any. "RR Flashing Signal," "RR Signal and Gate," and "Railroad Sign" are available options. The reporting officer filled in the circle beside "None."[3] Cameron relies on this report to demonstrate that while federal funds may have been approved to install advance warning signs, the signs were not actually installed.

Amtrak, Wall, and Treadwell argue that the police report is insufficient evidence to support summary judgment because it is unauthenticated and contains hearsay, and is, therefore, inadmissible. A police report may fall under the business records exception to hearsay under Federal Rule of Evidence 803(6). *See U.S. v. Halperin*, 441 F.2d 612, 618-619 (5th Cir. 1971) (noting that police reports are business records that may fall under Rule 803(6) hearsay exception); *Copeland v. City of Jackson*, 548 So.2d 970, 975 (Miss. 1989) (same). Under Rule 902(11), business records that are admissible under 803(6) are self-authenticating

> if accompanied by a written declaration of its custodian or other qualified person . . . certifying that the record–
> 
> (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

---

[3] Notably the reporting officer did not fill in the circles in other sections to indicate that the "First Harmful Event" was "Crash of MV in road with train" or to indicate that the intersection type was "RR Xing;" for the intersection type, the officer filled in the circle for "None."

>  (B) was kept in the course of the regularly conducted activity; and
>
>  (C) was made by the regularly conducted activity as a regular practice.

FED. R. EVID. 902(11).  Plaintiff submitted the police report as an exhibit to her response without an accompanying affidavit authenticating the document.[4]  Assuming without deciding that the accident report falls under the business record hearsay exception, the plaintiff has failed to properly authenticate the document, and, therefore, the evidence is inadmissible.

Because the Jones County Sheriff's office report is inadmissible, it is not sufficient evidence to support plaintiff's opposition to the defendants' summary judgment motions.  "It has long been settled law that a plaintiff must respond to an adequate motion for summary judgment with admissible evidence."  *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191 (5th Cir. 1991) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 n.19, 160, 90 S.Ct. 1598, 1609 n.19, 1609, 26 L.Ed.2d 142 (1970)).  In *Duplantis*, the Fifth Circuit held that an unauthenticated letter from the non-movant's expert witness was not sufficient to oppose summary judgment, and it was "not the district court's duty to examine whether and how it might be reduced to acceptable form by the time of trial."  *Id.* at 192; *see also Travland v. Ector County, Texas*, 39 F.3d 319, 1994 WL 612342 at **4-5 (5th Cir. 1994) (holding that district court abused its discretion when it considered unauthenticated, inadmissible memorandum as summary judgment evidence because custodian or other qualified witness did not verify their reliability required by Fed. R. Evid. 803(6)); *Richardson v. Oldham*, 811 F. Supp. 1186, 1198 (E.D. Tex. 1992) (striking unauthenticated police records and photographs from consideration at summary judgment stage).

---

[4] Furthermore, the accident report does not have a official seal and is not a certified copy of a public record.  Therefore, it does not self-authenticate under a different provision of Federal Rule of Evidence 902.  *See* FED. R. EVID. 902(1), (2), and (4).

In this case, a certification that the report was made shortly after the accident by someone with firsthand knowledge is particularly important since the report is contrary to the authenticated pictures of the crossing taken the day of the accident and the authenticated business records showing that federal money was spent on the actual installation of advance warning signs. Even if the Court were to consider the unauthenticated accident police record, the photograph submitted by Defendants clearly shows that there is no question of fact as to whether the advance warning signs were present. In sum, Cameron has failed to present admissible and reliable evidence to create a genuine issue whether the federally funded advance warning signs were installed at the intersection in question.

Claims "A" and "D" against MDOT either restate the warning claim or allege other negligent acts so broadly that they fail to meet the pleading standard. The United States Supreme Court has recently clarified the plaintiff's initial pleading burden under Rule 8(a) to sufficiently state a claim and survive a Rule 12(b)(6) motion.[5] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* The Court further stated:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.* at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478

---

[5]Because the Court in this case has considered matters outside the pleadings, the motion in this case would be treated as a motion for summary judgment under FED. R. CIV. P. 12(d).

>U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557, 127 S.Ct. 1955.

*Id.* Here, "A" and "D" allege that MDOT failed to inspect and locate unsafe conditions and knew of and failed to rectify dangerous conditions at the crossing. Obviously, if the "unsafe" or "dangerous" condition is the alleged absence of advance warning signs, these claims would be dismissed for the reasons stated above. If the claims refer to a different "unsafe" or "dangerous" condition, the complaint fails to mention what that condition is. Cameron alleges that AGS and Norfolk Southern failed to remove vegetation, but if he intended the overgrown vegetation as the "unsafe" or "dangerous" condition that MDOT failed to correct, he could have directly stated so. Similarly, claims "E" and "F" generally allege violations of regulations, statutes, and ordinances without reference to actual statutes or any allegations of factual circumstances that would be evidence of such a violation. These claims are the type of "unadorned accusations" that were characterized as insufficient in *Twombly*.

Claim "B" arguably states a valid claim against the MDOT. Cameron alleges that MDOT failed to direct the railroad owner, AGS and/or Norfolk Southern, to make "necessary repairs." Here, since Cameron brings a claim against the railroad owners for failure to remove vegetation at crossing, Cameron could arguably be claiming that MDOT breached its duty to direct the railroad owner to remove the vegetation. None of the defendants argued that there was an absence of a genuine issue as to whether unkempt vegetation obstructed the view at the crossing, and therefore the movants have failed to meet their burden to show that summary judgment is merited as to this claim.

### B. Claims Against AGS and Norfolk Southern

For the same reasons stated above, the negligence claims against AGS and Norfolk Southern alleging that they failed to provide adequate warning signs or adequate roadway signage are also preempted. Therefore, claims "B" and "D" that allege that AGS and Norfolk failed to provide adequate warning signs or roadway signage are preempted and should be dismissed. As noted above, AGS and Norfolk have not met their burden to show that there is an absence of a genuine issue regarding the vegetation at the crossing. Therefore, claim "A" against AGS and Norfolk Southern survives summary judgment. Claims "C," "E," and "F" are similar to the unadorned allegations brought against the MDOT and discussed above. To the extent they allege signage violations, they are preempted. To the extent they allege vegetation problems, they are duplicative. To the extent they allege other conditions at the crossing, they lack sufficient factual allegations to meet the pleading standard. In sum, these three claims are properly dismissed.

### C. Claims Against Amtrak, Treadwell, and Wall

Amtrak only seeks dismissal of the "claims challenging the adequacy of the warning devices in place at the time of the accident." *See* Amtrak's Mot. Partial Summ. J. 2 [Doc. # 58]. Claims "A," "B," and "C" argue Amtrak negligently supervised and trained its employees and negligently entrusted the train to their care. As Amtrak has not challenged these claims, they should not be dismissed. Claims "G" and "H" alleging inadequate warnings and adequate roadway signage are preempted as discussed above, and these claims should be dismissed. Claims "I" and "J" fail the pleading standard set forth in *Twombly* as they lack sufficient factual allegations, and instead, are merely unadorned allegations and are properly dismissed.

None of the negligence claims against Wall and Treadwell allege that they negligently failed to provide signage or other warning devices. As all the claims against them are outside the scope of the motions for summary judgment, the motion is denied as to all claims against Wall and Treadwell.

## IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Motions for Summary Judgment [Docs. ## 54, 58, 64] filed on behalf of Defendants, are hereby **granted in part and denied in part**. Claims A, C, D, E, and F against MDOT, claims B, C, D, E, and F against AGS and Norfolk Southern, and claims G, H, I, and J against Amtrak are dismissed with prejudice. A separate judgment shall be entered herein in accordance with FED. R. CIV. P 58.

SO ORDERED AND ADJUDGED this the 24th day of November, 2010.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE